920 A.2d 667 (2007)
392 N.J. Super. 227
STATE OF MAINE, Plaintiff-Respondent,
v.
SeKAP, S.A. GREEK COOPERATIVE CIGARETTE MANUFACTURING COMPANY, S.A., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2007.
Decided April 17, 2007.
*669 Hubert C. Cutolo, argued the cause for appellant (Sodini & Spina, attorneys, Iselin; Mr. Cutolo, on the brief).
Cathy Melitski, Deputy Attorney General, argued the cause for respondent (Stuart Rabner, Attorney General, attorney; Edward D. Tan, Deputy Attorney General, on the brief).
Before Judges WEFING, PARKER and MESSANO.
The opinion of the court was delivered by
MESSANO, J.S.C. (temporarily assigned).
In this appeal, we are required to interpret provisions of New Jersey's version of the Uniform Enforcement of Foreign Judgments Act (the UEFJA), N.J.S.A. 2A:49A-25 to -33, and in particular, N.J.S.A. 2A:49A-29 which sets forth the procedure to stay execution of a foreign judgment domesticated in New Jersey. Defendant, SeKap, S.A. Greek Cooperative Cigarette Manufacturing Company, S.A. (SeKap), appeals the motion judge's orders vacating a stay of execution previously entered in its favor, and denying its cross-motion for summary judgment. We affirm the judge's decision, but remand the matter for further proceedings consistent with our opinion.

*670 I.
In August, 2002, the state of Maine filed suit in Maine seeking to compel SeKap to deposit $312,945.38 into an escrow account. SeKap did not join in the 1998 national Master Settlement Agreement (MSA) wherein a number of states settled litigation against numerous cigarette manufacturers. After the settlement was reached, several states, including Maine, adopted model legislation which compelled non-settling cigarette manufacturers to establish escrow accounts in those various states and deposit monies in the accounts based upon the volume of cigarette sales in that particular state. These escrow accounts were designed to offset any competitive advantages non-settling manufacturers might otherwise gain by not participating in the MSA, and the monies in the escrow accounts were to be used to satisfy any judgments or settlements each state might obtain against the non-settling manufacturers. Maine's version of the model escrow statute is codified at 22 M.R.S.A. § 1580-I. Those manufacturers that do not establish and fund the mandatory escrow accounts are subject to monetary penalties pursuant to the statute.
Maine's complaint alleged that SeKap had not established or funded the required escrow account for its cigarette sales in Maine under the brand names, "Marathon" or "GR," during 2001. The complaint sought judgment requiring SeKap to post the required amount, as well as a statutory penalty in the amount of $938,836.14. Maine alleged it had personal jurisdiction over SeKap because the company "transact[ed] business within . . . Maine by supplying tobacco products, either directly or through a distributor . . . within . . . Maine, to consumers within . . . Maine."
Maine served its complaint through the Hague Convention and SeKap does not challenge the sufficiency of service. When SeKap failed to answer or appear, Maine successfully moved for default. In September, 2003, the Maine court entered judgment against SeKap for $1,251,781.50 and enjoined the sales of its cigarettes in Maine. This procedure was repeated with the filing of a second complaint in Maine in July, 2003 seeking additional monies and penalties for SeKap's alleged 2002 tobacco sales. Once again, SeKap failed to appear, and a second judgment was entered against it in December, 2004, in the amount of $1,128,646.50 along with similar injunctive relief.
Utilizing the procedure set forth in N.J.S.A. 2A:49A-27 and -28, Maine applied to the Superior Court in New Jersey and docketed the two foreign judgments in March, 2005. In April, the New Jersey court entered writs of execution for both judgments which were served upon Wachovia Bank in Morristown.[1] In May, SeKap moved via an order to show cause to temporarily restrain any execution on the account, to vacate the writs of execution and to vacate the docketed judgments, alleging Maine lacked personal jurisdiction over it. The motion judge granted the order to show cause, entered temporary restraints and set the matter down for a further hearing.
After a hearing held on July 1, 2005, a second motion judge denied Maine's request to dissolve the temporary restraints, and entered an order that provided
Defendant shall have sixty days in which to seek relief from judgment in Maine pursuant to N.J.S.A. 2A:49A-29(a) and (b). Upon proof of compliance with section *671 (a) and the posting of security to satisfy the judgment, enforcement shall be stayed. Otherwise, enforcement shall take effect on September 6, 2005. Thereafter, plaintiff may move before the court to dissolve the restraints.
SeKap did not file an appeal in Maine, nor post security, within the sixty day period.
In December, Maine moved to dissolve the restraints; SeKap cross-moved for summary judgment seeking to vacate the writs of execution and the docketed New Jersey judgments. In support of its cross-motion, SeKap argued that it need not post any security in order to stay execution of the writs and challenge the New Jersey judgment because the Maine judgment was void for lack of personal jurisdiction. It supplied the certification of its Director, Yiannis Bitos, that contained the following facts: SeKap was organized as a Greek co-operative under Greek law; it has no offices, branches, employees or agents in any state in the United States; it does not maintain an agent for service of process in the United States; it owns no property in, has no assets in, and has never contracted with anyone in Maine; no officer, agent or director of SeKap has physically been present in Maine; and, SeKap has never solicited or advertised its products in Maine. The certification explained that SeKap contracted with a Cypriot corporation, Denova, Serives, Ltd. (Denova), for the distribution of tobacco products in North America. SeKap has no control or ownership interests in Denova, nor does it control the marketing, pricing or sales of its products in the United States. Lastly, Bitos certified that SeKap did not "dictate, require or request that [its] product be sold in Maine."
On February 6, 2006, a third judge heard the motion and cross-motion. He noted that SeKap had not complied with the prior order of the court since it had not filed an appeal in Maine challenging jurisdiction. He further found that defendant had not complied with N.J.S.A. 2A:49A-29(a) or (b) which "sets forth the applicable procedures for appealing the enforcement of domesticated judgments." He dissolved the restraints. Turning to SeKap's cross-motion, he concluded
[T]here has been no showing that the defendant ever sought any relief from the judgment in the State of Maine and, basically, I'm denying the cross-motion because defendant counsel failed to provide the Court with any evidence that Maine lacked jurisdiction over the defendant. That's an issue that they should be taking up in the court in Maine, not here.

(Emphasis added.)
The cross-motion was denied.
SeKap moved for reconsideration. In part, defense counsel requested the court to reconsider the Bitos certification which was apparently unsigned when it accompanied the original motion papers. He advised the court that a signed, notarized certification had indeed been faxed to the court prior to the original motion being heard.[2] Once again the motion judge concluded that SeKap had not "pa[id] the judgment, or deposit[ed] the security to stay the judgment pending resolution of the jurisdictional issue in the State of Maine." He found no basis for reconsideration and denied SeKap's motion. This appeal ensued.

*672 II.
We begin by considering New Jersey's version of the UEFJA which is this state's selected mechanism "for discharging its Full Faith and Credit obligations" under U.S. Const. art. IV, § 1. Singh v. Sidana, 387 N.J.Super. 380, 382, 904 A.2d 721 (App.Div.2006), certif. denied, 189 N.J. 428, 915 A.2d 1051 (2007). As we held in Sonntag Reporting Serv. Ltd. v. Ciccarelli, 374 N.J.Super. 533, 540, 865 A.2d 747 (App.Div.2005), "[t]he focus of the UEFJ is the enforcement of judgments." The statute was designed "merely as a facilitating device and was not intended to alter any substantive rights of the parties in an action for enforcement of a foreign judgment." Id. at 539, 865 A.2d 747. Therefore, "merit or substantive defenses," which could have been raised in the foreign state, must be raised in that state's proceedings and cannot be used to collaterally attack the domesticated New Jersey judgment. Id. at 540, 865 A.2d 747.
However, the Constitutional requirements of the Full Faith and Credit Clause are predicated upon the judgment debtor having been accorded due process in the forum state. Id. at 538, 865 A.2d 747. A denial of due process occurs "when `the rendering state 1) lacked personal jurisdiction over the judgment debtor, 2) lacked subject matter jurisdiction, [or] 3) failed to provide the judgment debtor adequate notice and an opportunity to be heard.'" Ibid. (quoting Choi v. Kim, 50 F.3d 244, 248 (3d Cir.1995)). Thus, the judgment debtor may raise "due process defenses" in any enforcement action in New Jersey under the UEFJA. Sonntag, supra, 374 N.J.Super. at 540, 865 A.2d 747. This is consistent with our jurisprudence that pre-dates the 1997 passage of the UEFJA. See James v. Francesco, 61 N.J. 480, 485, 295 A.2d 633 (1972) (Full Faith and Credit Clause only applies to foreign judgment grounded upon proper jurisdiction over the debtor).
By asserting Maine lacked personal jurisdiction over the company, SeKap raised a "due process defense." It contends that until New Jersey courts decide the jurisdictional question, it is entitled to a stay of execution on any New Jersey assets if the writ of execution is based upon the challenged judgment. On this point, we disagree.
N.J.S.A. 2A:49A-29, entitled "Appeal of judgment pending; stay of execution," provides
a. If the judgment debtor shows the Superior Court that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished security for the satisfaction of the judgment required by the state in which it was rendered.
b. If the judgment debtor shows the Superior Court any ground upon which enforcement of a judgment of the Superior Court would be stayed, the Superior Court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this State.
SeKap argues that N.J.S.A. 2A:49A-29 only applies to valid foreign judgments  judgments predicated upon proper due process guarantees  and not to domesticated foreign judgments founded upon an improper extension of personal jurisdiction in the forum state. It contends that the UEFJA's definition of the term "foreign judgment" supports this interpretation.
*673 N.J.S.A. 2A:49A-26 defines a "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this State." (Emphasis added). Defendant argues since Maine's judgments were obtained without the required personal jurisdiction over SeKap, they are not entitled to full faith and credit in New Jersey, and, hence, are not foreign judgments for purposes of N.J.S.A. 2A:49A-29(a) or (b). We reject this circular argument.
No reported New Jersey case has considered the stay provisions contained in N.J.S.A. 2A:49A-29. However, a number of other jurisdictions have considered the equivalent statutory language found in their versions of the UEFJA in circumstances similar to those presented here. Almost uniformly, these other jurisdictions have required the judgment debtor to post adequate security in order to stay execution of any judgment domesticated in those states.
In Jackson v. Alexander, 706 So.2d 364, 365 (Fla.App.1998), the Florida appellate court interpreted that state's version of the UEFJA which specifically provided for a stay of enforcement of a domesticated foreign judgment in two circumstances:
(1) If, within 30 days after the date the foreign judgment is recorded, the judgment debtor files an action contesting the jurisdiction of the court which entered the foreign judgment or the validity of the foreign judgment and records a lis pendens directed toward the foreign judgment, the court shall stay enforcement of the foreign judgment and the judgment lien upon the filing of the action by the judgment debtor.
(2) If the judgment debtor shows . . . any ground upon which enforcement of a judgment of any . . . court of this state would be stayed, the court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this state.
[Fla. Stat. § 55.509(1) and (2).]
Thus, under subsection (1), the judgment debtor could specifically attack the forum state's lack of jurisdiction. Nevertheless, despite the omission of any security requirement in subsection (1), the Florida court, reading the statute in pari materia, concluded the debtor was required to post a bond before the action challenging jurisdiction and staying execution could proceed. Ibid.; accord Expedia Inc. v. McKenney's Inc., 611 So.2d 98, 100 (Fla. App.1992) (interplay of two subsections of Fla. Stat. § 55.509 requires posting of security before stay of alleged invalid foreign judgment); SCG Travel v. Westminster Financial, 583 So.2d 723, 726 (Fla.App.), app. dismissed, 591 So.2d 185 (Fla.1991).
In Segal v. Segal, 264 Conn. 498, 823 A.2d 1208 (2003), the debtor sought a stay of enforcement of a domesticated Nevada judgment pending final decision of his appeal in Nevada. Id. at 1209. He argued that a judgment under appeal was not a judgment entitled to full faith and credit under the Constitution and, thus, not a "foreign judgment" under the UEFJA. Id. at 1213-14. The lower court agreed, and determined that the Nevada judgment was not enforceable as a final judgment entitled to full faith and credit until the appeal was decided. Id. at 1210. The Connecticut Supreme Court rejected this argument and concluded that without posting adequate security, the debtor was not entitled to stay enforcement of the domesticated judgment. It reasoned that any other interpretation of the statute would nullify the express provisions of the UEFJA which required the posting of adequate security pending direct appeal. Id. at 1214.
*674 In Ex Parte Lyon Financial Servs., Inc., 775 So.2d 181 (Ala.2000), the Alabama Supreme Court reversed the trial court's stay of enforcement of a Minnesota judgment against an Alabama debtor. Id. at 182. The debtor sought the stay based upon a third-party claim, initially brought in Minnesota, but dismissed by that court. Ibid. The debtor argued that it should be allowed to continue its litigation against the third-party in Alabama, and that all enforcement actions based upon the domesticated Minnesota judgment should be stayed pending the resolution of its suit. Ibid. Interpreting Alabama's version of N.J.S.A. 2A:49A-29(b), the court concluded that the debtor was not entitled to the stay because 1) the third-party claim would not properly result in a stay under Alabama law and 2) the debtor had not posted the required security. Id. at 184. Accord Hinkle, Cox, Eaton, Coffield & Hensley v. The Cadle Co., 111 Ohio App.3d 713, 676 N.E.2d 1256, 1257 (holding debtor must post security to obtain a stay under Ohio's equivalent of N.J.S.A. 2A:49A-29(b)), discretionary appeal not allowed, 77 Ohio St.3d 1482, 673 N.E.2d 143 (1996).
In Dependable Ins. Co. v. Automobile Warranty Corp., 797 P.2d 1308 (Colo.App. 1990), the court interpreted Colorado's stay provisions which are identical to N.J.S.A. 2A:49A-29. Id. at 1309-10. In that case, defendant debtor filed a direct appeal of the Florida judgment in Florida and then sought a stay of execution on its assets in Colorado based upon the domesticated Colorado judgment. Id. at 1309. Noting the "important purpose of a supersedeas bond" is "to protect the nonappealing party's rights during an appeal," the court concluded that despite the pending direct appeal in Florida, the debtor was required to post a bond to secure a stay of execution in Colorado. Id. at 1310. Otherwise, the statute's "purpose would be negated." Ibid. It then considered the debtor's second argument under Colorado's equivalent to N.J.S.A. 2A:49A-29(b). Ibid. The court concluded that since Colorado law required the posting of security to obtain a stay, defendant's failure to post security required denial of the stay. Ibid. But see Pickwick Intern. v. Tomato Music Co., Ltd., 119 Misc.2d 227, 462 N.Y.S.2d 781, 784 (Sup.Ct. Spec. Term 1983) (holding under New York's equivalent of N.J.S.A. 2A:49A-29(b), court may, in its discretion, stay execution without posting of security because New York law permitted a stay under such circumstances).
SeKap has not brought to our attention any authority to the contrary. Our Legislature specifically provided that the UEFJA "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." N.J.S.A. 2A:49A-33. We have looked to the decisional law of sister states in interpreting other provisions of the UEFJA. Sonntag, supra, 374 N.J.Super. at 540-41, 865 A.2d 747. Moreover, in other circumstances where the Legislature has spoken so clearly, we have held that sister-state's interpretations of uniform legislation are "persuasive authority." New Jersey Lawyers' Fund for Client Protection v. Pace, 374 N.J.Super. 57, 64, 863 A.2d 402 (App.Div.2005), (noting out-of-state decisions are persuasive given requirement that the UCC be construed uniformly), aff'd 186 N.J. 123, 892 A.2d 661 (2006).
Returning to the issue presented in this case, SeKap failed to demonstrate "an appeal from the foreign judgment [was] pending or [would] be taken, or that a stay of execution [had] been granted" in Maine. Thus, separate and apart from the posting of any security, SeKap was not entitled to a stay of execution of Maine's domesticated judgments pursuant to N.J.S.A. 2A:49A-29(a).
*675 Additionally, SeKap was not entitled to a stay of execution pursuant to N.J.S.A. 2A:49A-29(b). Although it may have "show[n] the Superior Court a[ ] ground upon which enforcement of a judgment of the Superior Court would be stayed"  Maine's lack of personal jurisdiction  it failed to post "the same security for satisfaction of the judgment which is required in this State." Although not specifically advanced as one of defendant's contentions, we note that N.J.S.A. 2A:49A-27 provides that a properly domesticated foreign judgment
has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a Superior Court of this State and may be enforced in the same manner.
Thus, a judgment debtor might argue that the obligation to post security required by N.J.S.A. 2A:49A-29(b) is "subject to the same procedures . . . and proceedings for . . . staying [ ] a judgment" in New Jersey.
We recognize that SeKap's challenge to Maine's jurisdiction must be initially brought in the Law Division. As we noted in Sonntag,
Trial courts of sister states may inquire into defenses of lack of jurisdiction in the foreign court or fraud in procurement of the judgment, provided that those issues have not been litigated in the forum court.
[Sonntag, supra, 374 N.J.Super. at 538, 865 A.2d 747.]
Therefore, our standard governing the granting of a stay of enforcement of a money judgment on appeal is not applicable. See R. 2:9-5(a) (while the court may exercise its discretion to consider each request on its facts, absent a showing of good cause, the posting of a bond or cash is required); Pressler, Current N.J. Court Rules, comment 1 on R. 2:9-5(a) (2007).
R. 4:50-1 allows for the granting of relief from a judgment or order "upon such terms as are just." In the context of an application to vacate a default judgment, the court's discretion must be liberally exercised. Housing Authority of the Town of Morristown v. Little, 135 N.J. 274, 283-84, 639 A.2d 286 (1994). We have held that absent "extraordinary circumstances," a court should not condition the vacation of a default judgment upon the debtor's posting of a bond. Regional Const. Corp. v. Ray, 364 N.J.Super. 534, 544, 837 A.2d 421 (App.Div.2003). Rather, a "less burdensome alternative"  permitting the judgment to remain in place while execution is stayed  should be employed. Ibid.
We have once before, however, limited the scope of R. 4:50-1 in the context of its application to the UEFJA. In Sonntag, we concluded that despite the language of N.J.S.A. 2A:49A-27, relief under the rule was limited to New Jersey judgments. Sonntag, supra, 374 N.J.Super. at 539, 865 A.2d 747; Pressler, supra, comment 1 on R. 4:50-1 (2007). Since "the UEFJA . . . was not intended to alter any substantive rights of the parties," we construed N.J.S.A. 2A:49A-27 and R. 4:50-1(f) to permit a collateral challenge in New Jersey to a domesticated foreign judgment only on due process grounds. Sonntag, supra, 374 N.J.Super. at 539, 865 A.2d 747. Such a narrow construction was necessary to harmonize the UEFJA with the Full Faith and Credit Clause. Id. at 539-40, 865 A.2d 747.
We now hold that in order to stay execution of a foreign judgment pursuant to the UEFJA, a judgment debtor must strictly comply with the statute's provisions and post "security for satisfaction of the judgment" before a stay is issued. Any other interpretation would lead to the *676 anomalous result that a judgment debtor would be required to post security or obtain a stay from the rendering state while directly appealing the judgment in that state, N.J.S.A. 2A:49A-29(a), but not be required to post security to obtain a stay while it raised an identical due process defense in New Jersey. Such a result would give the debtor "more rights here . . . than the rendering state gives him there." SCG Travel, supra, 583 So.2d at 726. We are satisfied that the Legislature never intended such a result since it would fail to "effectuate [the UEFJA's] general purpose to make uniform the law of those states which enact it." N.J.S.A. 2A:49A-33. Furthermore, construing N.J.S.A. 2A:49A-27 and 29(b) in this manner assures "the constitutional right of a judgment creditor to enforcement of the judgment in a sister state . . . is not curtailed." Sonntag, supra, 374 N.J.Super. at 539, 865 A.2d 747.

III.
Although we conclude that SeKap was not entitled to stay the enforcement of Maine's judgments because it failed to comply with N.J.S.A. 2A:49A-29(a) or (b), we nonetheless remand the question of whether the judgments are void for lack of personal jurisdiction to the trial court. In this regard, the motion judge did not consider the Bitos certification at the first hearing. On the motion for reconsideration, he may have considered the certification, but he mistakenly applied the wrong standard to this aspect of SeKap's cross-motion for summary judgment. He concluded that SeKap could not raise the jurisdictional argument until it "pa[id] the judgment, or deposit[ed] the security to stay the judgment pending resolution of the jurisdictional issue in the State of Maine." As noted above, consistent with Constitutional mandates and the UEFJA, the judgment debtor may challenge jurisdiction collaterally in New Jersey by raising a due process defense. Sonntag, supra, 374 N.J.Super. at 540, 865 A.2d 747.
The motion judge mistakenly applied the requirements of N.J.S.A. 2A:49A-29 to deny all the relief sought by SeKap, including the underlying challenge it made to the validity of the foreign judgments. The UEFJA requires neither the direct appeal of the default judgments in Maine, nor the posting of adequate security in New Jersey, before SeKap may assert a due process challenge to the domesticated judgments. By its express terms, the requirements of N.J.S.A. 2A:49A-29 only apply to the debtor's request of a stay of execution.
Therefore, on remand, the judge must decide SeKap's jurisdictional challenge to Maine's judgments and determine whether Maine possessed adequate personal jurisdiction over SeKap. A remand is required because we cannot resolve the issue on the current record.
In opposing the jurisdictional argument made in SeKap's cross-motion for summary judgment, and its motion for reconsideration, Maine provided little by way of factual proofs that demonstrated its basis for asserting personal jurisdiction over the company. Attached to counsel's certification were two unreported decisions, one from a court in Maine, and one from a court in Ohio, neither of which involved SeKap as a party. Counsel also submitted a copy of a contract between SeKap and ITW Manufacturing, dated December 14, 2000, in which SeKap agreed to manufacture "Marathon" brand cigarettes "for the United States market."
"When a defendant asserts lack of personal jurisdiction, `the plaintiff bears the burden of demonstrating that the defendant's contacts with the forum *677 state are sufficient to confer personal jurisdiction on the court.'" Jacobs v. Walt Disney World, 309 N.J.Super. 443, 454, 707 A.2d 477 (App.Div.1998) (quoting Giangola v. Walt Disney World Co., 753 F.Supp. 148, 154 (D.N.J.1990)). As we noted in Jacobs, "In the early stages of a proceeding `where the factual record consists of only pleadings and affidavits, plaintiff's burden is satisfied by establishing a prima facie case of jurisdiction.'" Jacobs, supra, 309 N.J.Super. at 454, 707 A.2d 477 (quoting Cresswell v. Walt Disney Prod., 677 F.Supp. 284, 286 (M.D.Pa.1987)). While determination of the issue may be made upon affidavits, our Court Rules specifically allow for oral testimony, depositions and cross-examination when affidavits do not suffice. R. 1:6-6; see also Jacobs, supra, 309 N.J.Super. at 454, 707 A.2d 477. In short, further discovery is permitted and may be necessary to resolve the jurisdictional issues. Id. at 462, 707 A.2d 477; see also Makopoulos v. Walt Disney World, Inc., 221 N.J.Super. 513, 518, 535 A.2d 26 (App.Div.1987) (remand for further discovery required to determine whether solicitation provided basis for personal jurisdiction), certif. denied, 117 N.J. 661, 569 A.2d 1354 (1989). Maine authority recognizes that an evidentiary hearing may be necessary when "written submissions raise disputed issues of fact" as to personal jurisdiction. Dorf v. Complastik, Corp., 735 A.2d 984, 989 (Me. 1999).
Discovery may be particularly useful when the relationship between a party and an affiliate must be explored. Jacobs, supra, 309 N.J.Super. at 456, 707 A.2d 477. Here, the relationship between SeKap and Denova might properly be the subject of "[a]dditional discovery [that] may establish by competent evidence the mechanics of the arrangement." Id. at 457, 707 A.2d 477. Likewise, SeKap should be entitled to challenge Maine's conclusory statements that SeKap "transacted business in the State of Maine" because it contracted to manufacture cigarettes "for the United States market."

IV.
In summary, we hold that the motion judge properly concluded that SeKap was not entitled to any stay of execution because it failed to post the security required by N.J.S.A. 2A:49A-29. We also conclude that on the record presented, SeKap's cross-motion for summary judgment was properly denied. We hold that the assertion of a "due process defense" to the domesticated judgment may be properly raised without the posting of any security and we remand the matter to the motion judge to consider SeKap's jurisdictional challenge. In remanding the matter to the trial court, we do not imply any particular resolution of the jurisdictional issue. We only hold that the current record makes resolution of the issue impossible. The parties shall advise the motion judge whether they wish to engage in jurisdictional discovery, or otherwise supplement the record on the issue. We leave to the sound discretion of the judge control over the nature and scope of any discovery requested.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] We were advised at oral argument that SeKap had established an account at this bank but no monies were on deposit.
[2] Defendant's appendix contains a copy of the signed certification as well as a fax cover sheet and confirmation. Although the judge indicated he had not received the fully executed certification prior to his ruling on the motion, the confirmation indicates it was received by the court on February 2, 2006, four days before the motion was heard.