**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1551-19T3

THE NATURE USA
CORPORATION and
KRIEGER GLOBAL, LIMITED,

 Plaintiffs-Respondents,

v.

ZHONGGANG WANG, Individually
and as a Former Officer and Director
of Plaintiff THE NATURE USA
CORPORATION, A&E AMERICA
INC., CABINET DEPOT INC.,
EVERGREEN CABINETRY, and
ZEN CABINETRY, LLC,

 Defendants-Appellants.

_____

Submitted October 21, 2020 – Decided December 23, 2020

Before Judges Fuentes and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4109-17.

Susan C. Warnock, attorney for appellants.

Foley & Lardner, LLP, attorneys for respondents (Anne B. Sekel, on the briefs).

PER CURIAM

Defendants Zhonggang Wang, A&E America Inc., Cabinet Depot, Inc., Evergreen Cabinetry, and Zen Cabinetry, LLC, appeal from a November 8, 2019 Law Division order denying their motion to vacate a default judgment entered against defendants on July 18, 2018.

Wang was a director and president of plaintiff Nature USA Corporation (Nature USA), a business that sells cabinetry imported from China. According to plaintiffs' complaint, Nature USA was incorporated on May 28, 2014, when Krieger Global Limited (Krieger) formed a shareholder agreement with defendant A&E America Inc. (A&E America) to govern Nature USA. Krieger was the majority shareholder of Nature USA. A&E America's board of directors voted Wang as CEO of Nature USA.

The relationship between Wang and plaintiffs quickly deteriorated. Plaintiffs allege that Wang misappropriated over $3 million in inventory and made over 670 self-dealing sales to companies that he either directed or owned. Plaintiffs fired Wang on August 19, 2016.

After further efforts to resolve their disputes were unsuccessful, plaintiffs filed a complaint on July 7, 2017, against Wang, A&E America, Cabinet Depot,

Evergreen Cabinetry, Zen Cabinetry, and twenty-five unidentified corporate entities alleging various counts for breach of contract, unjust enrichment, action on account, breach of fiduciary duty, negligence, fraud, trespass to chattels, and civil conspiracy. The complaint was properly served on all known defendants.

All defendants failed to appear, and plaintiffs moved for and secured entry of judgment by default granted on March 2, 2018. The court ordered a plenary hearing on damages. Two months later, the trial court sent notice to all known parties of a hearing on damages scheduled for June 5, 2018. The hearing was rescheduled for July 17, 2018, and all known parties received notice. Following the hearing, the trial court entered a final default judgment on July 18, 2018, for $5,741,294.99 plus interest, which was served on all defendants except for the unidentified corporate entities.

Subsequently, plaintiffs sought to domesticate the judgment in New York and served Wang and A&E America with notice in September 2018. On September 24, 2018, plaintiffs filed an information subpoena to enforce the default judgment. A hearing on the New York domestication was scheduled for November 13, 2018. Wang and A&E America received notice of a change of return date on November 2, 2018. Defendants' counsel attended the hearing but refused to enter an appearance on the record and sought an adjournment.

3

On September 12, 2019, fourteen months after default judgment was entered and ten months after the New York hearing, defendants moved to vacate the default judgment under <u>Rule</u> 4:50-1 and included a proposed answer to plaintiffs' complaint as well as counterclaims. Defendants' explanation for this delay was that their lawyer is a "solo practitioner with limited resources."

In support of their motion, defendants claimed excusable neglect under <u>Rule</u> 4:50-1(a) and exceptional circumstances under <u>Rule</u> 4:50-1(f). Specifically, defendants argued that the death of their lawyer's brother made it impossible for her to serve as counsel, she directed defendants to obtain other representation, defendants sought new counsel who never responded to plaintiffs, and that defendants were confused because plaintiffs continued to solicit business from them.

Defendants acknowledged that their motion for excusable neglect was filed past the one-year deadline under <u>Rule</u> 4:50-2 but claim that their motion was filed only one day late, on September 12, 2019, because the default judgment was entered on September 11, 2018. Defendants further asserted that their counsel had "issues with [her] scanner and Adobe Acrobat program," which delayed the filing of the motion until September 12, 2019.

A-1551-19T3

The trial court denied the motion as time barred by <u>Rule</u> 4:50-2, which requires certain motions to vacate default judgments to be filed within one year of the entry of a default judgment, and determined that the motion under subsections (a) and (f) of <u>Rule</u> 4:50-1 failed on the merits. Addressing both grounds for vacating the default judgment, the court explained:

> [H]ere the document[ary] record [establishes] that defendant Wang was on notice of the pending actions against him during the course of the litigation. Plaintiffs continued to serve both he and his former counsel Ms. Warnock with papers. There is nothing to evidence the fact that defendant Wang ever retained other counsel, and that other counsel did anything that would constitute excusable neglect. The extended delay between the entry of the default judgement and the filing of the instant [m]otion, while more than over a year has passed, and furtherss that due to the domestication proceeding in New York established that defendant Wang was aware of the proceedings, but only sought to stop that one [m]otion and then wait almost an additional ten months before filing the instant motion.
>
> Further[,] it's clear that the standard or factual basis which is argued by movant has been addressed, and has not been accepted by the court in terms of the court's adjudicating that carelessness of an attorney doesn't meet an excusable neglect standard. Particularly when both here client and attorney did not exhibit due diligence along with any mistake. And here, because of the notice as well as the appearance that the movant simply neglected to act and . . . has not met the standard for excusable neglect.

Finally, the trial court noted that plaintiffs would be prejudiced if defendants' motion were granted, because plaintiffs would have to "renew their litigation now years after the initial filing."

This appeal followed. Defendants argue the trial court abused its discretion in denying the motion to vacate the default judgment because they demonstrated exceptional circumstances. We disagree and affirm.

Rule 4:50-1 permits a party to motion to vacate a default judgment. Generally, "[a] motion under Rule 4:50-1 is addressed to the sound discretion of the trial court, which should be guided by equitable principles in determining whether relief should be granted or denied." Hous. Auth. of the Town of Morristown v. Little, 135 N.J. 274, 283 (1994). A motion to vacate a default judgment should be liberally granted to the extent that justice requires. State of Maine v. SeKap, S.A. Greek Co-op. Cigarette Mfg., S.A., 392 N.J. Super. 227, 240 (App. Div. 2007).

We review the disposition of a motion to vacate a default judgment for abuse of discretion and will not disturb a trial court's decision absent a "clear abuse of discretion." Carrington Mortg. Servs., LLC v. Moore, ___ N.J. Super. ___, ___ (slip op. at 4) (App. Div. 2020). A trial court commits an abuse of discretion "when a decision is 'made without a rational explanation, inexplicably

departed from established policies, or rested on an impermissible basis.'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). We must reverse where the trial court gives insufficient deference to the principles governing a motion to vacate a default judgment. Davis v. DND/Fidoreo, Inc., 317 N.J. Super. 92, 100-01 (App. Div. 1998). However, the question of whether a motion is time barred is a legal question of law subject to de novo review. Cf. Cumberland Cty. Bd. of Chosen Freeholders v. Vitetta Grp., P.C., 431 N.J. Super. 596, 603 (App. Div. 2013) (noting that the application of a statute of limitations is subject to de novo review).

Motions to vacate default judgments under Rules 4:50-1(a)-(c) must be filed within one year of the entry of the default judgment. R. 4:50-2. Such motions made under Rules 4:50-1(d)-(f) must be filed within a "reasonable time." R. 4:50-2.

Defendants offer no palatable explanation as to how the trial court abused its discretion. To reach its decision, the trial court applied Rule 4:50-1 in evaluating the merits of defendants' motion considering the repeated service of defendants and defense counsel throughout the proceedings; defense counsel's physical appearance at the New York domestication hearing; and the lack of

A-1551-19T3

supporting documentation for defendants' claim that — following the death of defense counsel's brother — they supposedly retained new counsel who failed to take any action in the case.

Moreover, defendants presented no exceptional circumstances. Courts vacate default judgments under Rule 4:50-1(f) "sparingly" and only to prevent "grave injustice." Cmty. Realty Mgmt., Inc. v. Harris, 155 N.J. 212, 237 (1998). Courts primarily consider four factors: "(1) the extent of the delay in making the application; (2) the underlying reason or cause; (3) the fault or blamelessness of the litigant; and (4) the prejudice that would accrue to the other party." Parker v. Marcus, 281 N.J. Super. 589, 593 (App. Div. 1995); see also Aujero v. Cirelli, 110 N.J. 566, 577 (1988) (approving of this framework, although not outright adopting it). Exceptional circumstances justifying the vacatur of a default judgment have been found in various circumstances, none of which are analogous to the present matter.

Contrary to the defendants' claims of confusion, misunderstanding, or error by counsel, the record strongly suggests that defendants sat idly as plaintiffs pursued a default judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION